# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41688

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | Boise, April 2014 Term |
| TERMINATION OF THE PARENTAL | ) | |
| RIGHTS OF JOHN DOE (2013-29). | ) | 2014 Opinion No. 75 |
| | ) | |
| | ) | Filed: August 1, 2014 |
| | ) | |
| | ) | Stephen Kenyon, Clerk |

Appeal from the district court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Bryan K. Murray, Magistrate Judge.

The order of the magistrate court is affirmed.

Honeycutt, Smith & Stokes, PLLC, Pocatello, for appellant John Doe (2013-29).

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent Idaho Department of Health and Welfare.

_____

ON THE BRIEFS

HORTON, Justice.

This is an expedited appeal from the magistrate court's order terminating the parental rights of John Doe (2013-29) based upon the trial court's finding that that Doe neglected his minor child, T.C., and that it was in T.C.'s best interests to terminate Doe's parental rights. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological father of T.C. who was born in October of 2010. Doe was a juvenile when T.C. was born. T.C. has Type I diabetes and requires specialized medical care. Doe and T.C.'s mother (Mother) were never married and never resided together. Mother has three children,[1] including T.C., all fathered by different men. R.T., the father of the youngest child,[2] acted as a father figure to all three children and resided with Mother when the Idaho Department

---

[1] The oldest, T.J., born in January of 2008; second, T.C. born in October of 2010; and, youngest, N.T. born in March of 2012.

[2] R.T.'s parental rights were terminated by the magistrate court in a separate proceeding on September 4, 2013.

1

of Health and Welfare (the Department) initiated child protection proceedings. The Department became involved in this matter due to R.T. physically abusing T.J. The Department was also aware of drug use and repeated domestic violence that occurred in the home of Mother and R.T.

Doe has paid Mother a total of $52.00 in child support, despite a court order requiring him to pay Mother child support of $253.00 per month. Doe owes approximately eight thousand dollars in unpaid child support. Doe has never provided T.C. or Mother with any alternate form of support such as clothing, diapers, or food. During T.C.'s life, Doe was regularly incarcerated and had no contact with T.C. for months at a time; including a substantial period of time that the child protection proceedings were ongoing. Doe has been unable to maintain employment or a home and typically resides in the homes of various girlfriends. Doe is addicted to methamphetamine and, when not in custody, he uses methamphetamine every other day. Doe has an extensive criminal record and has been a defendant in more than forty criminal matters.

On June 22, 2012, the Bannock County Prosecutor filed a petition under the Child Protective Act (CPA) asking the magistrate court to place T.C under the supervision of the Department. The same day, the magistrate court ordered the removal of T.C. on the basis that continuation in the home would be contrary to T.C.'s welfare. The magistrate court placed T.C. in the care of the Department. Doe learned of the Department's petition on June 24, 2012, when his aunt informed him of the proceedings.

On June 24, 2012, Doe was arrested for aggravated assault with a firearm and remained in the Bannock County jail until August 15, 2012.

A shelter care hearing was held on June 25, 2012. As Doe was in custody, he was not present at the hearing. Following the hearing, the magistrate court issued a shelter care order on June 28, 2012, placing T.C. in the Department's care pending an adjudicatory hearing.

On June 28, 2012, Carol Jeffries, a safety assessor with the Department, visited Doe at the Bannock County jail and informed Doe of the magistrate court's order sheltering T.C. Jeffries informed Doe that the Department would work on a reunification plan and that he would need to participate in the plan. Jeffries discussed the American Safe Family Act (ASFA) with Doe and the statutory timelines for child protection proceedings. Doe informed Jeffries that he would be serving fifty days in jail and Jeffries told Doe to contact her when he was released. When Doe was released on August 15, 2012, he made no effort to contact Jeffries or the Department.

2

On July 19, 2012, an adjudicatory hearing was held and the magistrate court ordered that T.C. be placed in the custody of the Department pending a disposition hearing. Doe was still in custody and was not present at the hearing. The magistrate court instructed the Department to prepare a written case plan and to serve the parties with the case plan at least five days before the case plan hearing set for August 13, 2012.

On August 13, 2012, the magistrate court held a case plan hearing. Again, Doe was in custody and not present. The magistrate court adopted the Department's proposed case plan. The case plan required Doe to: (1) complete a family assessment by the Department clinician and follow any recommendations; (2) complete a substance abuse assessment and follow the recommendations of the assessor; (3) demonstrate an ability to provide for his child financially; and (4) demonstrate an ability to maintain a home free of drugs and crime. Doe testified that he did not see the court-ordered case plan until July of 2013.

Between Doe's release in August 2012 and February 2013, Doe intermittently visited T.C. by contacting Mother and dropping-in on Mother's scheduled visitation with the Department. Maria Keller, the Department's case manager, testified that she saw Doe at Mother's house during one of Mother's scheduled visits and that Doe indicated he did not want his own visitation, but rather he wanted to join in Mother's visitation because he could not take care of T.C.

On December 19, 2012, the magistrate court held a review hearing. Doe appeared at the courthouse, talked with Keller prior to the hearing, and then left before the hearing began. At the review hearing, the magistrate court found that the Department was making reasonable efforts towards reunification.

On February 13, 2013, Doe was arrested for failure to appear, and remained in custody for approximately 25 days. Upon release, Doe again visited T.C. periodically by dropping in on Mother's scheduled visitation.

Doe returned to custody in April of 2013 for failing to appear and new charges of forgery and fraudulent ATM transactions. Doe pleaded guilty and was sentenced to five years imprisonment, with two years fixed; however, the sentencing court retained jurisdiction for one year. At this time, Doe was optimistic he would be placed in a rider program but was unsure if it would come to fruition. Doe remained in custody for the remainder of the CPA and termination proceedings.

On January 29, 2013, Keller transferred the case to Racheal Peace, a licensed social worker with the Department. Peace visited Doe at the Bannock County jail in May of 2013. At their meeting, Peace discussed the approaching AFSA termination timelines with Doe. Peace reviewed the case plan with Doe and encouraged him to take advantage of any classes or programs that might be offered should he be placed in a rider. Peace received a letter from Doe in June of 2013 that he was likely going to be placed on a rider and was not in a position to take T.C.

On June 20, 2013, the magistrate court held a permanency hearing. Doe received a notice of the hearing but was in custody and not present at the hearing. At the hearing, the magistrate court found that the Department was making reasonable efforts towards reunification. The court noted that the case had been ongoing for twelve months and that the Department was required to file for termination in three months. At this time, the permanency plan filed by the Department recommended termination and adoption. Nonetheless, the magistrate court ordered the Department to continue its reunification efforts.

On July 17, 2013, the Department filed a petition to terminate Doe's parental rights. The petition asserted that Doe's parental rights should be terminated on grounds of neglect and that termination was in T.C.'s best interests.

On August 30, 2013, the magistrate court held a review hearing; Doe was transported to the hearing from the Bannock County jail. This was Doe's first appearance during the child protection proceedings.

On September 10, 2013, Doe filed a motion requesting that the magistrate court find compelling reason not to pursue termination. The magistrate court denied Doe's motion, finding that the issue was not timely raised and that nothing prohibited the Department from going forward with termination.

The matter proceeded to a court trial, which took place over two days. Doe appeared in court the first day and by telephone the second. Following the trial, Doe's attorney requested permission from the magistrate court to file additional briefing, which the court granted. Doe filed his post-trial memorandum on November 5, 2013. Doe's post-trial memorandum argued that there was not substantial and competent evidence that Doe neglected T.C. and that termination was not in T.C.'s best interests.

4

On December 9, 2013, the magistrate court issued findings of fact and conclusions of law and concluded that Doe's parental rights should be terminated on the grounds of neglect. The magistrate court concluded that termination of Doe's parental rights was in T.C.'s best interests because Doe could not meet T.C.'s physical, developmental, and emotional needs. The magistrate court found that Doe neglected T.C. because Doe: (1) had never been a father to T.C. and T.C. does not know Doe as her father; (2) provided no financial support; (3) provided no parental care whatsoever; (4) was unable to address T.C.'s medical needs; and (5) demonstrated poor judgment in believing that Mother provided a safe environment.

On December 10, 2013, the magistrate court entered its judgment in the case terminating Doe's rights. On December 20, 2013, Doe timely filed his notice of appeal from the magistrate court's termination order and judgment.

## II. STANDARD OF REVIEW

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties.

*Idaho Dep't of Health & Welfare v. Doe (2011-16)*, 152 Idaho 263, 267, 270 P.3d 1048, 1052 (2012) (quoting *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 36, 41, 244 P.3d 180, 185 (2010)). "[Q]uestions of statutory interpretation are questions of law over which this Court exercises free review." *Idaho Dep't of Health & Welfare v. Doe (2010-28)*, 150 Idaho 563, 566, 249 P.3d 362, 365 (2011) (quoting *Stuart v. State*, 149 Idaho 35, 40, 232 P.3d 813, 818 (2010)). Where it is claimed that the trial court abused its discretion, this Court examines:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Id.* (quoting *Baxter v. Craney*, 135 Idaho 166, 169, 16 P.3d 263, 266 (2000)).

5

## III. ANALYSIS

**A. The Court will not address Doe's argument that the Department's failure to make reasonable reunification efforts violated his procedural due process rights because it was not raised below.**

The focus of Doe's argument in this appeal is that because the Department did not make reasonable efforts at reunification during the CPA proceedings, he was not given a chance to work his case plan and was denied procedural protections required by ASFA. Because he was denied these procedural protections, Doe contends that the magistrate court violated his procedural due process rights by identifying his failure to work his case plan as a factor supporting termination.

Doe concedes that his procedural due process argument, brought pursuant to ASFA, was not raised as an issue before the magistrate court. Nonetheless, Doe argues that the magistrate court's alleged error is reviewable on appeal because it constitutes a fundamental error. Specifically, Doe argues that the magistrate court's conclusion that irregularities in the underlying CPA proceedings may not serve as a defense in the termination proceedings profoundly distorted the trial, resulting in reviewable fundamental error.

The Department responds that Doe may not raise his procedural due process argument premised on ASFA in this appeal because the issue was not raised at trial or in the parties' post-trial briefing below.

In appeals before this Court from a termination of parental rights, "[t]his Court will not consider claims of error raised for the first time on appeal." *Doe v. Doe*, 149 Idaho 392, 398, 234 P.3d 716, 722 (2010) (citing *Michalk v. Michalk*, 148 Idaho 224, 232, 220 P.3d 580, 588 (2009)). In the criminal context, a claimed error may still be reviewed on appeal where the error raised constitutes a fundamental error. *State v. Gomez*, 153 Idaho 253, 255, 281 P.3d 90, 92 (2012) (holding that a fundamental error in a criminal case may be reviewed by this Court even though the issue or objection was not raised at trial). However, this Court's fundamental error analysis is not applicable to termination appeals because they are civil, not criminal or quasi-criminal matters. *See State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010) (recognizing that the Court's fundamental error analysis is only applicable in instances where a criminal "defendant [is] deprived of his or her Fourteenth Amendment due process right to a fair trial in a fair tribunal"). In so holding we adopt the rationale of the Texas Supreme Court from *In re B.L.D.*, 113 S.W.3d 340 (Tex. 2003). There, the Texas court reasoned that because parental termination

cases do not apply criminal procedural or evidentiary rules, the fundamental error doctrine, rooted in criminal law, was not applicable. *Id*. at 351.

In this case, Doe's procedural due process argument premised on ASFA is not reviewable because it was not raised below; either during trial or in the parties' extensive post-trial briefing. Accordingly, we will not address Doe's argument that the magistrate court committed fundamental error by allegedly denying Doe his procedural due process rights under ASFA.[3]

## B. Substantial and competent evidence supports the magistrate court's order terminating Doe's parental rights.

The magistrate court terminated Doe's parental rights on the grounds that Doe neglected T.C. The court concluded that clear and convincing evidence established that Doe neglected T.C. because Doe: (1) had never been a father to T.C. and T.C. did not know Doe as her father; (2) never supported T.C. during her lifetime; (3) was delinquent in child support; (4) never provided any parental care or control; and (5) is not capable of caring for T.C. The magistrate court also concluded that termination was in T.C.'s best interests because Doe could not meet T.C.'s physical, developmental, and emotional needs.

Doe argues that the magistrate court's conclusions that he neglected T.C. and that termination was in T.C.'s best interests are not supported by substantial and competent evidence because the Department failed to make reasonable efforts to reunify Doe with T.C. Doe argues that because he was not given a meaningful opportunity to complete his case plan, the magistrate court could not adequately evaluate his potential to be successful. Accordingly, Doe argues that the magistrate court could only assume that he neglected T.C. and that termination was in T.C.'s best interest.

---

[3] We note that the CPA contemplates that the Department will make reasonable efforts at reunification during the pendency of CPA proceedings. However, whether the Department has made reasonable efforts at reunification is not part of the magistrate court's analysis when terminating parental rights on the grounds of neglect. *See* I.C. § 16-2002(3)(b)(i)(ii). Where the Department's efforts at reunification are substandard, this should be addressed during the CPA proceedings by motion or argument to the court under I.C. § 16-1622(2)(g)(iii), which provides:

> If the child has been in the temporary or legal custody of the department for fifteen (15) of the most recent twenty-two (22) months, the department shall file, prior to the last day of the fifteenth month, a petition to terminate parental rights, unless the court finds that:
> ….
> (iii) The department has failed to provide reasonable efforts to reunify the child with his family.

Doe failed to make such an argument or motion to the magistrate court below prior to the filing of the termination petition.

In response, the Department argues that substantial and competent evidence supports the magistrate court's conclusion that Doe neglected T.C. and that termination of Doe's parental rights was in T.C.'s best interests. The Department argues that evidence of a parent's past is highly relevant in making a termination decision. Further, the Department notes that the magistrate court made numerous factual findings, unchallenged by Doe, supporting termination on the grounds of neglect.

Idaho Code section 16-2005 permits the Department to petition for termination of the parent-child relationship when it is in the child's best interest and one of the statutory grounds for termination from I.C. § 16-2005(a)–(e) are present. *In re Doe*, 149 Idaho 401, 407, 234 P.3d 725, 731 (2010). The relevant statutory ground in this case is neglect. I.C. § 16-2005(b). "Neglect," under Idaho's termination statutes has multiple definitions. *See* I.C. §§ 16-2002(3)(b), 16-1602(26). In this case, the definition from Idaho Code section 16-1602 is applicable because it was the basis for the magistrate court's finding of neglect. Under Idaho Code section 16-1602 a "neglected" child is one:

> Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them ... or ... [w]hose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being.

I.C. § 16-1602(26)(a), (b).

Here, the magistrate court's findings of fact, which go unchallenged by Doe, show that substantial and competent evidence supported the magistrate court's decision to terminate Doe's parental rights on grounds of neglect. The evidence overwhelmingly established that Doe was unable to provide proper parental care and control for T.C. Doe has never been a father to T.C. Rather, T.C. knew Mother's live-in boyfriend, R.T., as her father. In the periods of T.C.'s life that Doe has not been incarcerated, Doe has never once provided independent parental care for T.C. Doe has shirked his court-ordered parental responsibility by failing to pay child support. During the pendency of the child protection proceedings, Doe continued this pattern of failing to be present for T.C. by refusing to contact the Department and declining to participate in sanctioned visitation. Doe is addicted to methamphetamine and uses every other day when not incarcerated. As a result, Doe has never maintained a job with which to provide subsistence for

T.C., nor has Doe ever maintained a home to shelter T.C. T.C.'s need for specialized medical care makes her need for stability and attentive parental care even greater than the typical child. Because clear and convincing evidence establishes that Doe has never acted as a father, and is unable to provide proper parental care and control for T.C., we affirm the magistrate court's conclusion that Doe neglected T.C.

"When a judge finds a statutory ground, such as neglect, he or she must then decide if termination of parental rights is in the best interests of the child." *In re Doe*, 149 Idaho at 408, 234 P.3d at 732 (quoting *Doe v. Dep't. of Health & Welfare*, 141 Idaho 511, 516, 112 P.3d 799, 804 (2005)).

The magistrate court concluded that termination of Doe's parental rights was in the best interests of T.C. The magistrate court based this decision on T.C.'s need to develop physically, mentally, and emotionally. Substantial and competent evidence supports the magistrate court's finding that termination was in T.C.'s best interest. As noted above, Doe does not possess the parenting ability to properly foster T.C.'s physical, mental, and emotional development. Additionally, termination is in T.C.'s best interests because it frees her to be adopted, along with her two siblings, by the foster parents with whom T.C. has formed a strong bond. Accordingly, we affirm the magistrate court's conclusion that termination of Doe's parental rights is in T.C.'s best interests.

**C. The magistrate court did not abuse its discretion in denying Doe's motion to find compelling circumstances to delay termination.**

On September 10, 2013, Doe filed a motion with the magistrate court asking the court to find compelling reasons why termination was not in T.C.'s best interests and requesting that he be given more time to complete his case plan. Doe argued to the magistrate court that although he had an extensive criminal history and was addicted to methamphetamine, the rider would give him the opportunity to finish his high school education, complete drug and alcohol treatment, and undergo psycho-social rehabilitation. These opportunities, Doe argued, would allow him to become a father to T.C. The magistrate court found that no compelling reasons existed to lift the State's burden of pursuing termination because the motion failed to address any pertinent compelling circumstances and the motion was untimely.

Doe argues that the magistrate court erred in not delaying the proceedings to terminate his parental rights. Specifically, Doe argues that the magistrate court abused its discretion by terminating Doe's parental rights without granting Doe additional time to be assessed and

participate in treatment while completing his rider. Doe contends that the magistrate court did not have adequate information to properly evaluate his potential to be a stable parent and would have gained such information if the termination proceedings had been delayed.

In response, the Department argues that the magistrate court did not abuse its discretion in proceeding pursuant to the statutory termination timeline. The Department asserts that the facts of this case did not warrant delaying termination proceedings because no evidence was presented that Doe would have been successful if given more time to complete his case plan. The Department contends that the magistrate court had adequate evidence to evaluate Doe's potential to be a stable parent. Additionally, the Department argues that, except for periods of incarceration, Doe has not had a single period of stability in his life since T.C.'s birth. Finally, the Department argues that any delay in termination would not be in T.C.'s best interests because it would delay her adoption with her two other siblings and create further uncertainty in her life.

Idaho Code § 16-1622 provides:

> If the child has been in the temporary or legal custody of the department for fifteen (15) of the most recent twenty-two (22) months, the department shall file, prior to the last day of the fifteenth month, a petition to terminate parental rights, unless the court finds that:
>
> ….
>
> (ii) There are compelling reasons why termination of parental rights is not in the best interests of the child.

I.C. § 16-1622(2)(g). Whether compelling circumstances warrant a deviation from Idaho Code section 16-1622's timeline lies within the discretion of the trial court because the statute expressly grants the trial court the authority to find compelling reasons for delay when it is in the child's best interests. *Id*. A discretionary decision will be "upheld if it appears that the trial court (1) correctly perceived the issue as discretionary, (2) acted within the boundaries of its discretion and consistent with the applicable legal standards, and (3) reached its determination through an exercise of reason." *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 474, 477, 235 P.3d 1195, 1198 (2010).

Here, the magistrate court did not abuse its discretion by proceeding with termination and denying Doe's motion to delay the termination proceedings. First, the magistrate court expressly recognized its discretionary ability to find compelling circumstances. Second, the magistrate court acted within the boundaries of its discretion and consistently with the applicable legal standards by denying the motion. The motion filed to delay termination in this case was filed on

10

September 10, 2013, nearly two months after the termination proceedings were initiated. The purpose of Idaho Code section 16-1622(g)(2) is to delay the Department's *filing* of a petition for termination. Thus, as the magistrate court properly found, Doe's motion was untimely and the court acted consistently with legal standards in denying it. Third, the magistrate court exercised reason in deciding not to delay termination. The magistrate court considered the motion's untimeliness as well as the factual allegations made in the motion before deciding to deny the motion. Accordingly, we conclude that the magistrate court did not abuse its discretion in denying Doe's motion.

## IV. CONCLUSION

We affirm the magistrate court's order terminating Doe's parental rights and award costs on appeal to the Department.

Chief Justice BURDICK and Justices EISMANN and J. JONES **CONCUR**.