IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45399

| | | |
|---|---|---|
| In the Matter of the DOE CHILDREN, Children Under Eighteen (18) Years of Age. | ) ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | 2018 Unpublished Opinion No. 336 |
| Petitioner-Respondent, | ) ) ) | Filed: January 24, 2018 |
| v. | ) ) | Karel A. Lehrman, Clerk |
| JANE DOE (2017-29), | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. A. Lynne Krogh, Magistrate.

Judgment terminating parental rights, affirmed.

Lary G. Sisson, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Teri A. Whilden, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Jane Doe (2017-29) appeals from a judgment terminating her parental rights. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Jane and John Doe were married and resided together with their five minor children. The three eldest children were declared in imminent danger due to the unsanitary condition of their home in 2007. The two youngest children had not been born at that time. The walkways and

1

floors in the home were covered with clothes, toys, trash and debris, and the kitchen surfaces were covered with old food and dirty dishes. The children were placed in the custody of the Idaho Department of Health and Welfare. A case plan was substantially completed and the 2007 case was closed. In 2010, the Department received referrals regarding concerns of neglect of the children and the condition of the home. A safety assessor met several times with Jane to talk about cleaning up the home and in-home services were provided to assist the family for about a month. Law enforcement officers went to the home to do a welfare check and found the home to be in an unsanitary condition that was hazardous to the children's health and safety. The police found the house filled with toys, trash, and other debris. There were various choking hazards, the carpet was littered with wood chips, and dog feces were on the floor. The children were removed from the home and placed into the custody of the Department. The magistrate approved a case plan, the family received family preservation services, and the case plan was substantially completed and closed.

In 2011, Jane Doe accessed behavioral and developmental services for two of the children. Seventy hours of services per week were approved, which included intensive behavioral intervention for the children, developmental therapy for one child, and psychosocial rehabilitation services for Jane. While providing service, the therapist found that two of the children were undisciplined and had not been taught age-appropriate skills. According to the therapist, it was almost impossible to move throughout the home because of the piles of clothes, toys, trash, and dog feces. The therapist also noticed that the children's mattresses were soaked with urine and had no linens. The therapist observed mold around the sinks and toilets; no soap, toothpaste, toothbrushes, or washcloths; and prescription medications, including psychotropic medications, were left on the dining room table within reach of the children. The therapist was concerned about the condition of the home and worked with Jane to address the issues.

Based on the therapist's concerns regarding the condition of the home, she contacted the Department. During a welfare check, officers found the home was in a similar condition as it had been when the children had been removed previously. The home contained clothing, toys and trash strewn about; dirty, stained carpets; dog feces; and the kitchen was covered with dirty dishes and food containers. In the garage there was a freezer that had thawed and contained rotting turkeys and a mass of maggots. As a result, the four eldest children were again removed

2

from the home and placed into the custody of the Department. After the children were removed from the home, the youngest child was born. The newborn child was also placed into the custody of the Department, but an extended home visit was authorized since the home did not present the same hazards to a baby. A case plan was approved by the magistrate. The Department later terminated the extended home visit for the baby due to safety concerns. In 2012, the magistrate approved a permanency plan with a goal of continued efforts of reunification and an alternative goal of termination of parental rights and adoption. In 2013, the magistrate approved an amended case plan. Later in 2013, the magistrate approved an amended permanency plan, with the primary goal of termination of parental rights and adoption, with a concurrent goal of reunification. The magistrate approved an extended home visit in 2014 and closed the child protection proceeding because the parents completed much of the case plan.

In July 2015, law enforcement responded to concerns regarding the condition of the home and found the home in a similar state as the other times the children had been removed. There was no power or water in the home and the refrigerator had been zip-tied closed. In addition, officers discovered piles of debris, animal feces on the floor, and dirty dishes containing rotting food. The children were declared in imminent danger and placed in the custody of the Department. In September 2015, the magistrate approved a case plan with the goal of reunification. The case plan provided that Jane would obtain counseling services, develop an appropriate parenting plan, have a clean home free of hazards to the children for 180 days, maintain a legitimate and sufficient source of income, complete parenting education, and complete an updated psychological assessment. The case plan stated that the Department could request termination of Jane's parental rights if the children were in foster care fifteen out of the last twenty-two months and if Jane was not actively working her case plan.

In March 2017, the Department filed a petition to terminate Jane's parental rights on the grounds that Jane failed to comply with the case plan, neglected the children, and was unable to discharge parental responsibilities. In September 2017, the magistrate terminated Jane's parental rights after finding clear and convincing evidence that she had neglected the children and termination was in the best interests of the children. Jane appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

### A. Neglect and Best Interests of the Children

#### 1. Neglect

Jane contends the magistrate abused its discretion when it found by clear and convincing evidence that termination of parental rights was in the children's best interests. The magistrate found that Jane had neglected her children. Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(31), as well as situations where the parent has failed to comply with the court's orders or the case plan in a Child Protection Act (CPA) case, and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

The magistrate found, and it is uncontested, that the children have been in the Department's custody since July 2015, long past the statutory goal of achieving reunification within fifteen months. The children were in the custody of the Department until the judgment terminating parental rights in September 2017.

Jane argues that she completed many of the case plan tasks that were given to her. However, the magistrate found that Jane failed to complete the terms of her case plan despite

5

having the time to do so. The plan specifically required Jane to obtain counseling services and to understand her children's trauma and how the history of foster care had impacted them. The case manager testified that Jane had not completed this task because she often made excuses for the events that resulted in the children's child protection history and did not take responsibility for the continued removal from the home. Jane was also required to develop an appropriate parenting plan and complete parenting education. By the time of termination, the case manager testified that Jane still could not demonstrate an understanding of her children's needs that was appropriate to the children's ages.

Notably, the case plan required Jane to have a clean home free of potential health hazards to the children. The caseworker regularly reminded Jane of the need to get the home clean and keep it clean for six months, and Jane repeatedly told the caseworker that the home was almost ready. Jane contacted the case manager to say the home was ready for inspection about eighteen months after the removal of the children, but the case manager found it was still not ready for the children. The case manager testified that there was so much stuff stacked up in the home that it was dangerous for young children and the home smelled of urine. The case manager continued to find the house in unsanitary and unsafe conditions with each visit. Based on the testimony given by the numerous care providers, the magistrate determined there was consistent and overwhelming evidence that the unsanitary and unsafe conditions of Jane's residences never substantially improved. Thus, the magistrate's finding that Jane failed to complete the case plan was supported by clear and convincing evidence.

The magistrate found that Jane had neglected her children in that she had not provided the parental care or control necessary for the children's well-being and that this neglect frequently recurred and persisted over a period of many years. The magistrate concluded that the neglect in this case included the failure to maintain the home in a sanitary condition, failure to provide normal parental supervision and guidance, failure to provide appropriate medical care or providing inappropriate care, and slow progress toward reunification despite extensive services provided to the family. The magistrate determined that the home was found in a toxic condition on multiple occasions. The magistrate concluded that the children's lack of age-appropriate behaviors and skills was largely attributable to long-term lack of normal parental guidance and supervision. Because there was clear and convincing evidence that Jane did not complete her

6

case plan, that the children were in foster care for twenty-six months preceding termination, and that reunification was not accomplished, the magistrate did not err in finding that Jane neglected the children as defined in I.C. § 16-2002(3).

## 2. Best interests of the children

Jane argues that the magistrate erred when it found that termination of parental rights was in the best interests of the children. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Specifically, Jane asserts that her inadequacies and completion of the case plan could have been satisfied by additional access to other programs. However, as noted above, the magistrate found that Jane had neglected the children by failing to provide the care or control necessary for the children's well-being and the neglect occurred frequently and persisted over a period of many years despite access to extensive services. As described above, the neglect included the failure to maintain the home in a sanitary condition, failure to provide normal parental supervision and guidance to the children, failure to provide appropriate medical care, and slow progress towards reunification. Jane failed, or was unable, to meet the basic needs of the children and the children have suffered because of the neglect.

Conversely, the children flourished in foster care and bonded with their foster parents, who provided for all of the children's needs. Prior to removal, the children had frequent trips to an urgent care provider. After months with the foster family, there were no more trips to urgent care, the children did not have sleep disorders, and did not need inhalers. Prior to removal, the

7

baby had not been gaining weight but, after removal, gained appropriate weight. Since removal, the children's social skills and well-being has improved. The magistrate found, and the record supports, that it is highly unlikely that Jane will provide the care necessary for the children's well-being on a consistent basis in the future and, if the children were to return to Jane's custody, another removal would occur and cause more trauma to the children. As it is not in the best interests of the children to continue to be removed and then returned to the home, it is in the best interests of the children that the parental rights are terminated.

Jane also asserts that, because some of the children expressed a desire to be returned to Jane's home, the magistrate erred in finding that termination was in the best interests of the children. The magistrate acknowledged that some of the children wished to be reunited with Jane, but preferred to stay together with their siblings if they were not reunited with Jane. The magistrate found that the children were together with foster parents who provided the care necessary for their well-being and had expressed a desire to adopt all five children. Thus, the magistrate concluded it was in the best interests of the children to be with parents who were able to adequately and appropriately take care of them and provide the care necessary for their well-being. Accordingly, the magistrate did not err in determining that termination was in the best interests of the children.

B.      Reunification

Jane argues that the Department failed to make reasonable efforts toward reunification because it did not further extend visits with the children to see if remedial efforts would be successful. Jane also contends that the case manager failed to meet the Department's obligations under the case plan. Specifically, Jane argues the case manager failed to monitor the cleanliness of the home, the Department did not offer home visits as an incentive to keep the home clean, and the Department did not make reasonable efforts to review Jane's progress in meeting the case plan. The CPA contemplates that the Department will make reasonable reunification efforts during the CPA proceedings. *In re Doe (2013-29)*, 156 Idaho 682, 688 n.3, 330 P.3d 1040, 1046 n.3 (2014). However, whether the Department has made reasonable efforts at reunification is not part of the magistrate's analysis when terminating parental rights on the grounds of neglect. *Id*. Issues regarding the Department's alleged substandard efforts of reunification should be addressed during the CPA proceedings by motion or argument prior to the filing of the

termination petition. *Id.* There is no indication that Jane raised the issue of the Department's alleged failure to provide reasonable reunification efforts below to the magistrate during the CPA proceedings. Accordingly, this Court will not consider it now on appeal.

**C.**     **Reasonable Accommodations under the Americans with Disabilities Act**

Jane contends that the Department deprived her of her rights under the Americans with Disabilities Act (ADA) and under I.C. § 16-1621(3)(c) by failing to provide reasonable accommodations in an attempt to reunify her with her children. Jane did not raise the argument that the Department deprived her of her rights under the ADA below to the magistrate. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Because Jane failed to properly preserve this argument by raising it below, this Court will not consider it now on appeal.

Idaho Code Section 16-1621(3)(c), part of the CPA, focuses on the need for a reunification plan, visitation, and the tasks necessary for reunification. As noted in Part B in regard to reunification efforts, the alleged failure of the Department to provide reasonable accommodations under this part of the CPA must be raised before the magistrate during the CPA proceedings and not for the first time during termination proceedings. Because there is no indication that Jane raised this issue during the CPA proceedings, this Court will not consider this issue now on appeal.

## IV.
## CONCLUSION

There was clear and convincing evidence that Jane neglected the children and that it was in the best interests of the children for Jane's parental rights to be terminated. Because Jane did not assert below that the Department failed to provide reasonable reunification efforts, the issue is not reviewable on appeal. Similarly, Jane failed to preserve her arguments that the Department deprived her of her rights under the ADA and I.C. § 16-1621(3)(c) and they will not be considered now on appeal. Accordingly, the magistrate's judgment terminating Jane's parental rights is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.