# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45805

In the Interest of: JANE DOE II, a Child Under Eighteen (18) Years of Age.

JANE DOE (2018-11),

    Plaintiff-Appellant,

and

JANE and JOHN DOE I,

    Counter Petitioners-Respondents

and

JOHN DOE,

    Third Party Petitioner.

Boise, June 2018 Term

Filed: July 10, 2018

Karel A. Lehrman, Clerk

---

Appeal from the Magistrate Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Christopher Bieter, Magistrate Judge.

The final decree appointing Aunt as Jane's permanent guardian is <u>vacated</u>. This case is <u>remanded</u> for a new trial.

Whitney Welsh, Boise, and W. Christopher Pooser, Stoel Rives, LLP, Boise, attorneys for Petitioner Jane Doe. W. Christopher Pooser argued.

C.K. Quade Law, PLLC, Boise, and Sandra L. Clapp & Associates, PA, Eagle, attorneys for Counter Petitioners-Respondents Jane and John Doe I. Charlene K. Quade argued.

---

BEVAN, Justice

## I. NATURE OF THE CASE

This appeal concerns the guardianship of a ten-year-old child, Jane Doe II ("Jane"). Both of Jane's parents passed away in 2017. Thereafter, a family friend with whom Jane and her

mother had been living, ("Friend"), petitioned for guardianship. Jane's father's twin sister ("Aunt") also petitioned for guardianship. During proceedings the magistrate court appointed a local attorney, Auriana Clapp-Younggren ("Clapp-Younggren"), to serve as both the attorney and the guardian ad litem for Jane. After trial the magistrate court followed Clapp-Younggren's recommendation and awarded temporary guardianship to Friend so that Jane could finish the school year, but appointed Aunt as Jane's permanent guardian. Friend appealed the magistrate court decision.

## II. FACTS AND PROCEDURE

Jane was born in 2007. Throughout her childhood, both of Jane's parents struggled with substance abuse and had multiple encounters with the criminal justice system. Jane's parents both tried to co-parent Jane, while relying on other family members to assist them with raising her. In 2011, Jane's mother ("Mother") developed a romantic relationship with Friend's son while residing in the Idaho State Hospital. Following Mother's release from the hospital, she and Jane began living with Friend and Friend's son. Jane was four-years-old at that time. Friend is Jane's godmother, and assisted in helping Mother raise Jane while they lived with her. Evidence at trial showed that they all lived together in Boise and operated as a family unit, i.e., attending school functions, helping with homework, and providing discipline for Jane. As a result of Jane's parents relying on various family and friends to help raise Jane, Friend knew Jane's father ("Father") and his family, including Aunt.

Aunt had a friendly relationship with Mother. Aunt was familiar with the struggles that both parents had with substance abuse, but remained supportive of their desire to co-parent Jane. In January 2017, Father suddenly and unexpectedly died. Following Father's death, in May of 2017, Mother arranged for Jane to visit Aunt in Montana. After Father's death Jane and Mother continued to live with Friend. Then, on August 30, 2017, Mother relapsed and died as a result of a drug overdose.

On Friday, September 1, 2017, Friend filed a *pro se* petition for guardianship of Jane. After filing the petition, Friend notified Jane's paternal family of Mother's passing. Aunt filed a petition for guardianship on the following business day, September 5, 2017.[1] The magistrate court immediately appointed Clapp-Younggren to act as a guardian ad litem and attorney for

---

[1] On October 20, 2017, Jane's grandfather also petitioned for guardianship; however, he did not appear at the trial, and therefore the court did not consider his petition for guardianship.

2

Jane. After a hearing on September 19, 2017, Friend was granted temporary guardianship of Jane until trial, which was set for January of 2018.

On November 22, 2017, Friend moved to have an attorney appointed to represent Jane pursuant to Idaho Code section 15-5-207. On November 28, 2017, the judge summarily denied the motion during a telephonic conference. Also in November, Friend and Aunt entered into a Preliminary Agreement regarding Aunt's contact with Jane, which was mediated by Clapp-Younggren. On December 10, 2017, Friend filed a motion requesting Jane be allowed to testify at the guardianship proceeding.

On December 7, 2017, Clapp-Younggren filed the Guardian Ad Litem Initial Report. The report stated that Jane's best interests would be served by her moving to Montana with Aunt at the end of the school year. As part of determining what would be in Jane's best interest, Clapp-Younggren interviewed several people including Jane's third and fourth grade teachers, her school counselor, an outside counselor, Jane, Friend, Aunt, and Jane's grandfather. Clapp-Younggren did not visit Montana or interview anyone from Montana other than Aunt; however, Aunt provided pictures of her Montana residence as well as letters from various family and friends. Additionally, Clapp-Younggren obtained information regarding the criminal backgrounds of the parties and Friend's son.

Prior to the trial, Clapp-Younggren submitted her final report, which again recommended that Jane remain with Friend until the end of the school year, and then that Jane move to Montana with Aunt. The report noted as well that Jane had "consistently stated to [Clapp-Younggren] that Jane would like to stay with [Friend], that she enjoys her friends and is doing well in her current school. [Jane] does not want to move to Montana with [Aunt]."

After trial the magistrate court adopted Clapp-Younggren's recommendation. The magistrate court also set a six-month review hearing for December of 2018, to determine whether it was still in Jane's best interest to remain in Montana. On February 15, 2018, the magistrate court entered a decree appointing Aunt as permanent guardian of Jane. Friend filed an expedited appeal.

### III. ISSUES ON APPEAL

1. Whether the magistrate court erred when it appointed the same person to serve as both the attorney representing Jane and the guardian ad litem for Jane.

2. Whether the magistrate court abused its discretion in finding the appointment of Aunt as permanent guardian served Jane's best interests.

## IV. STANDARD OF REVIEW

An appellate court will not set aside a magistrate's factual findings so long as they are supported by substantial, competent evidence. *In re Doe*, 156 Idaho 682, 687, 330 P.3d 1040, 1045 (2014). "Substantial competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Doe v. Doe*, 148 Idaho 243, 245, 220 P.3d 1062, 1064 (2009) (internal quotation omitted). "This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties." *Doe*, 156 Idaho at 687, 330 P.3d at 1045 (internal citation omitted). This Court freely reviews the magistrate's interpretation of a statute. *In re Guardianship of Doe*, 157 Idaho 750, 756, 339 P.3d 1154, 1160 (2014).

## V. ANALYSIS

**A.     The magistrate court abused its discretion by failing to conduct a reasonable inquiry into whether Jane possessed sufficient maturity to direct her own attorney.**

On appeal, Friend argues that the magistrate court erred when it appointed Clapp-Younggren as both the attorney and the guardian ad litem for Jane. Specifically, Friend asserts that the court erred because the purpose of an appointed attorney is to advocate for the child's wishes, while the purpose of a guardian ad litem is to represent the child's best interests. Friend argues that the magistrate conflated these roles by treating Clapp-Younggren as Jane's attorney in certain situations, i.e., refusing to allow Friend to cross-examine Clapp-Younggren, and at other times treating her as the guardian ad litem, i.e., accepting the report advising the court of Jane's best interests.

Idaho Code section 15-5-207 sets forth the procedure for court appointment of a guardian ad litem or attorney for a minor and provides, in pertinent part:

> The court shall appoint an attorney to represent the minor if the court determines that the minor possesses sufficient maturity to direct the attorney. If the court finds that the minor is not mature enough to direct an attorney, the court shall appoint a guardian ad litem for the minor. The court may decline to appoint an attorney or guardian ad litem if it finds in writing that such appointment is not

4

necessary to serve the best interests of the minor or if the Idaho department of health and welfare has legal custody of the child.

Idaho Code § 15-5-207(7).  Notably, section 15-5-207(7) previously mandated that upon the filing of a petition, the court was required to appoint an attorney to represent the minor, and that the attorney would have all the powers and duties of a guardian ad litem.  However in 2005, the Legislature, recognizing the distinct roles that attorneys and guardians ad litem play, amended section 15-5-207 to allow for the appointment of an attorney based on the minor's maturity. Under the amended statute, the court must appoint an attorney if the court determines that the child possesses sufficient maturity to direct an attorney, but the court must appoint a guardian ad litem if the child does not. 2005 Idaho Laws Ch. 113 (S.B. 1053).  The Legislature eliminated the provision granting the attorney the powers and duties of a guardian ad litem.

Under section 15-5-207(7) as it exists today, the court has discretion to decide whether or not to appoint an attorney for the minor based on the minor's maturity. *Id.*  In considering whether the district court abused its discretion this Court reviews whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life, Inc.,* No. 45200, 2018 WL 3150964 (Idaho June 28, 2018).

Here, the magistrate court checked two boxes on the form order appointing Clapp-Younggren in this case.  One box appointed her as the attorney for Jane and the other box appointed her as Jane's guardian ad litem.  Thereafter, Friend filed a motion for the magistrate court to appoint an attorney for Jane under Idaho Code section 15-5-207(7).  This motion was accompanied by an affidavit of a psychotherapist who testified that Jane possessed sufficient maturity to direct her own attorney.  However, the judge denied the motion simply stating "I'm denying the motion.  Ms. Clapp-Younggren is going to represent [Jane's] interests in the case." The magistrate court judge gave no explanation for why he was denying the request.  Further, the record reflects that the magistrate court made no effort to determine Jane's maturity level.  The only evidence in the record pertaining to Jane's maturity level at the time of the hearing is the affidavit of the psychotherapist who opined that Jane *could* direct counsel.

We hold that the magistrate court's error is twofold.  First, the magistrate court erred by checking both boxes and appointing Clapp-Younggren as the attorney and the guardian ad litem

5

for Jane. The purpose of the 2005 amendment was to strip away the ability for counsel to wear two hats. *See* 2005 Idaho Laws Ch. 113 (S.B. 1053). Thus, the court has three options: it can appoint an attorney, it can appoint a guardian ad litem, or both. However, if the court chooses to appoint an attorney and a guardian ad litem, one person may not fill both of those roles.[2] In cases where a child is unable to direct an attorney, then the court shall appoint a guardian ad litem. *See* I.C. § 15-5-207(7).

Second, the magistrate court abused its discretion by failing to conduct a hearing regarding Jane's maturity level and by summarily denying the request for an attorney without providing an explanation for doing so. A child's maturity must be determined on a case-by-case basis. In cases where older children are involved, we take guidance from the Legislature's recent amendment to Idaho Code section 16-1614 which mandates an attorney be appointed for children "twelve (12) years of age or older." *See* I.C. § 16-1614. While this is a different statute with different circumstances at play, the procedural fairness provided in that statutory scheme is relevant in all proceedings involving children, including petitions to determine guardianship. We appreciate the fact that here, Jane is a ten-year-old child who may not possess the requisite maturity to direct an attorney. However, the only evidence in the record concerning her maturity level is the testimony of the psychotherapist who opined that she could.

Friend also raised the issue of whether she had a right to cross-examine Clapp-Younggren at trial. Other jurisdictions have routinely held that guardians ad litem may be subjected to cross-examination in child protection cases, and we see no reason why guardianship proceedings should be treated any differently. *See, e.g.*, *Kelley v. Kelley*, 175 P.3d 400, 403 (Okla. 2007) (parties in a custody proceeding have the right to cross-examine guardian ad litem concerning basis for custody recommendation); *In re Hoffman*, 776 N.E.2d 485, 489 (Ohio 2002) ("[I]n a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation."); *Scheibe v. Scheibe*, 241 N.W.2d 100 (Minn. 1976) (a party to a custody dispute has the right to cross-examine the author of any report or recommendation on the custody and visitation of a minor child); *In re Kosek*, 871 A.2d 1, 7 (N.H. 2005) ("[T]he right to be heard in custody and

---

[2] We take this opportunity to remind counsel that they must consider their roles and obligations under the Rules of Professional Responsibility when serving as both guardian ad litem and counsel. The Rules prohibit acting as both when the attorney has a reason to know of a conflict, as is apparent in this case.

visitation cases encompasses the right to call and cross-examine witnesses, to be informed of all adverse evidence, and to challenge such evidence."). If a guardian ad litem is offering facts and opinions upon which the court will rely, then the guardian ad litem may be subjected to questioning by both parties. *See Yearsley v. Yearsley*, 94 Idaho 667, 671, 496 P.2d 666, 670 (1972) (this Court held that a father seeking a change in the custody of his daughter had the right to confront and cross-examine an investigator who conducted an independent investigation of the child's circumstances).

We vacate the decree appointing Aunt as Jane's permanent guardian and remand for new trial and to allow the magistrate court to conduct a hearing to determine whether Jane is capable of "sufficient maturity to direct [an] attorney." I.C. § 15-5-207(7). Because we remand for new trial we do not reach the second issue on appeal.

## VI. CONCLUSION

The final decree appointing Aunt as Jane's permanent guardian is vacated and the case is remanded so that the magistrate court can conduct a hearing to determine whether Jane possesses sufficient maturity to direct her own attorney prior to the new trial. Pursuant to Idaho Code section 15-5-207(7), "[t]he court shall appoint an attorney to represent the minor if the court determines that the minor possesses sufficient maturity to direct the attorney." No costs are awarded on appeal; however, we take this opportunity to express our appreciation to the attorneys who represented Jane *pro bono* in this case. While that fact did not affect the outcome of this appeal, the Court encourages counsel to make the time to make a difference through the Idaho Volunteer Lawyers Program, as counsel did in this case.

Chief Justice BURDICK, Justices HORTON, BRODY and STEGNER, CONCUR.