## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 46584

| | | |
|---|---|---|
| In the Matter of: | ) | |
| **Jane Doe I and Jane Doe II, Children** | ) | |
| **Under Eighteen (18) Years of Age.** | ) | |
| **IDAHO DEPARTMENT OF HEALTH** | ) | |
| **AND WELFARE,** | ) | **Filed: March 20, 2019** |
| | ) | |
| Petitioner-Respondent, | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| v. | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **JANE DOE,** | ) | **BE CITED AS AUTHORITY** |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, District Judge.

Judgment terminating parental rights, <u>affirmed</u>.

Randall S. Barnum, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Madison N. Miles, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Jane Doe appeals from the judgment terminating her parental rights to her two minor children. Doe argues that the magistrate erred in terminating her parental rights because (1) the Idaho Department of Health and Welfare (Department) did not make reasonable efforts to reunite her with the children, (2) the Department did not provide sufficient grounds for termination, and (3) the Department did not establish, by clear and convincing evidence, that termination was in the best interests of the children.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe and John Doe are the biological parents of two children, L.B. born in 2016 and Z.B. born in 2018. In June 2017, the magistrate awarded legal custody of L.B. to the Department after police executed a search warrant on the Doe's residence and declared L.B. in imminent danger. The police served the warrant to investigate allegations that John Doe had victimized his oldest daughter, A.B. At the time of the search, Doe and John Doe were married and living together, with L.B., in a converted one-car garage. The residence did not have a toilet or running water. Fifteen animals were living in the residence and police found a large quantity of marijuana. There was an overwhelming smell of stale marijuana and animal urine. Officers observed that L.B. smelled like urine, was underweight, and had matted hair. Doe admitted that the couple had been selling marijuana from the residence for over a year, often in the presence of L.B. In addition, Doe admitted that she and John Doe used the drug on a daily basis.

As a result of the search, both parents were convicted of possession of a controlled substance with the intent to deliver and felony injury to child. Additionally, John Doe was convicted of felony sexual exploitation of a child for possessing pornographic photos of A.B. Doe was placed on felony probation for ten years. Later, Doe pled guilty to failure to report for aiding John Doe by deleting five pornographic photographs from John Doe's phone that depicted A.B. In August 2017, the court approved case plans for both parents. In May of 2018, Z.B. was born. At the time of Z.B.'s birth, John Doe was incarcerated for the above offenses. A month after birth, Z.B. was placed in foster care. The Department was awarded legal custody, and the court approved additional case plans for both parents.

In October 2018, the Department filed an amended petition for termination of parental rights. At John Doe's direction, a default judgment was entered against him. Following trial, the magistrate terminated Doe's parental rights after finding clear and convincing evidence that Doe had neglected the children, had an inability to discharge her parental responsibilities for a prolonged period, and termination was in the best interests of the children. Doe timely appeals.

# II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d

2

341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each

3

statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## A. Reasonable Efforts to Reunite Children

Doe argues that the magistrate erred in concluding the Department made reasonable efforts to reunite her family. She alleges that, although the Department and magistrate were aware that Doe had a disability, the Department failed to identify Doe's disability or provide her with reasonable accommodations in formulating her case plan. Doe bases this argument on United States Public Law 96-272, which provides in part, "in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home." In response, the Department argues that (1) whether the Department made reasonable efforts at reunification is not part of the magistrate court's analysis when terminating parental rights, and (2) this Court should not consider claims of error raised for the first time on appeal. We agree with the State.

On appeals before this Court from a termination of parental rights, "this Court will not consider claims of error raised for the first time on appeal." *Doe v. Doe*, 149 Idaho 392, 398, 234 P.3d 716, 722 (2010). Further, in the case of *In re Doe*, the Idaho Supreme Court explained,

> [T]he CPA (Child Protection Act) contemplates that the Department will make reasonable efforts at reunification during the pendency of CPA proceedings. However, whether the Department has made reasonable efforts at reunification is not part of the magistrate court's analysis when terminating parental rights on the grounds of neglect. *See* I.C. § 16-2002(3)(b)(i)-(ii). Where the Department's efforts at reunification are substandard, this should be addressed during the CPA proceedings by motion or argument to the court under I.C. § 16-1622(2)(g)(iii) . . . .

*In re Doe*, 156 Idaho 682, 690 n.3, 330 P.3d, 1040, 1048 n.3 (2014).

Here, Doe failed to make such an argument or motion to the magistrate during the CPA proceedings, and she did not argue that the Department did not make reasonable efforts for reunification at the termination hearing. Thus, this argument is not properly preserved and will not be considered by this Court on appeal. *Doe*, 149 Idaho at 398, 234 P.3d at 722.

## B. Statutory Grounds for Termination

Doe argues that the magistrate erred in concluding that the Department proved the existence of grounds for terminating the parent-child relationship by clear and convincing evidence. Although Doe does not specifically challenge either of the statutory grounds for

4

termination found by the magistrate, Doe argues that she has "demonstrated the ability to meet the Daughters' needs when supported by services from individuals and government agencies" and "[t]here is no requirement in the law that Mother be able to independently meet the Daughters' needs." However, a court may terminate parental rights if it finds that doing so is in the best interests of the children and at least one of five grounds for termination is satisfied. I.C. § 16-2005(1). Here, the magistrate found that the statutory grounds for termination were (1) neglect, and (2) and inability to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child. We address each in turn.

### 1. Neglect

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a CPA case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

Substantial and competent evidence supports the magistrate's finding that Doe neglected her children. The underlying child protection case began in June of 2017, when L.B. was sixteen months old. L.B. was removed from the home because of unsafe and unsanitary conditions. L.B.'s bed was urine-soaked. Doe and John Doe had been selling marijuana at the residence for a year, often while L.B. was present. After the Department took custody of L.B., a CARES evaluation revealed that L.B. was significantly malnourished for a child her age. In fact, L.B. was not even on the growth chart and was diagnosed with failure to thrive. Doe was only feeding L.B. almond milk and lacked the understanding to provide L.B. with adequate nutrition. In addition to the CARES evaluation, L.B. underwent a hair follicle test which revealed the presence of THC.

The court approved a case plan for Doe which set forth various tasks for Doe to complete such as: undergoing substance abuse assessment and complying with recommendations,

5

complying with felony probation, undergoing a psychological evaluation and complying with the recommendations, initiating and maintaining contact with the Department, securing and maintaining stable housing, maintaining sufficient legal income, and participating in parenting education and protective parenting classes. While the children were in the custody of the Department, Doe completed her psychological evaluation which revealed that Doe's cognitive functioning was very low compared to adults her age. The examiner opined that Doe's "low cognitive functioning has been responsible for much of her poor decision making as a parent," and makes her vulnerable to manipulation and maltreatment from others. Based on her results, the psychologist recommended that Doe participate in various educational classes to teach Doe parenting skills. In addition to the psychological test, Doe submitted clean urinalysis tests, and attended various classes and programs (some of which were recommended by the psychologist) to help her understand how to provide adequate care, protection, and nutrition for her children. Those services included: protective parenting classes and access to behavior health, family preservation, the infant/toddler program, and the women and children's alliance. While it is important to note that Doe complied with a majority of the requirements of her case plan, Doe failed to demonstrate that she had the ability to provide the care and protectiveness necessary for her children's well-being.

Through the pendency of the CPA case, Doe was repeatedly informed by the magistrate and the Department that she had to acquire adequate housing and could not associate with individuals that posed an unacceptable risk of domestic violence and sexual abuse to her children. Specifically, Doe was told that it was unsafe to expose the children to John Doe, Doe's maternal grandfather, and Doe's maternal great-grandfather based on their alcoholism, domestic violence, child abuse, and inappropriate sexual behavior. The magistrate's concern regarding those individuals stemmed from abuse those individuals perpetrated on Doe. When Doe was a child, she resided with her maternal grandfather until age thirteen. Doe's grandfather exposed her to alcoholism, domestic violence, and the physical abuse of her siblings. After the domestic violence and physical abuse in her grandfather's home became so pervasive, Doe chose to move into the home of her maternal great-grandfather. When Doe was eighteen, her great-grandfather was sexually inappropriate with Doe. At age twenty-one, Doe met and became involved with John Doe who has engaged in inappropriate sexual behavior with his oldest daughter and has manipulated and controlled Doe.

Throughout the CPA case, Doe continually assured the magistrate and the Department that she was going to acquire adequate housing, was not in communication with John Doe, and was distancing herself from individuals that posed a known risk of harm to her children. However, at a disposition hearing in August 2018, the Department informed the magistrate of frequent jail phone calls between Doe and John Doe. At trial, Doe testified that she had acquired appropriate housing and had filed for divorce from John Doe in order to provide the care and protection necessary for her children. The Department provided the recorded phone calls between Doe and John Doe as evidence during the termination trial. The recordings spanned much of the CPA case and contradicted Doe's assurances to the court and the Department. The recordings showed that Doe planned to move out of her newly acquired apartment, was having frequent contact with John Doe, had no intentions of separating from John Doe, and planned to continue to maintain close contact with her grandfather and great-grandfather. Based on all the evidence presented, the magistrate did not find that Doe's testimony rebutting the Department's case was compelling.

In regard to her residence, Doe continued to reside with her maternal grandfather from June 2017 to July 2018 despite knowing that this residence would never be approved by the court. In July 2018, Doe acquired a studio apartment from a family friend. Although the parties initiated a lease agreement, Doe was not required to pay rent and the family friend could terminate the lease upon a two-week notice. Additionally, during the phone calls, Doe and John Doe discussed that the residence that Doe obtained was temporary and was a means to convince the court to return the children to Doe's care. The couple made plans to return to the grandfather's home upon John Doe's release from prison.

Further, during the calls, Doe reassured John Doe that she would never leave him and repeatedly stated "I love you." Doe discussed sending mail and money to John Doe, addressed from a friend, so that the magistrate and Department would not know of her contact with John Doe. In addition, the couple conspired to appear to be getting a divorce but made plans to reunite after the CPA case resolved. Moreover, the recording evidenced that Doe allowed John Doe to have contact with her children through phone calls, pictures, and videos, despite John Doe's no-contact order with all children. Although Doe "became personally aware that at least one (1) of the several allegations against [John Doe for] sexually exploiting his older daughter, [A.B.], was true," Doe "sought to protect her husband by deleting incriminating photos." The

7

magistrate found that Doe was "steadfast through the Child Protective Act case that [John Doe] did not commit the crimes for which he was convicted . . . . Further, [Doe] has maintained that even if [John Doe] did commit the acts, he does not pose an on-going risk of sexual offending toward [the children]."

In addition, the recordings revealed that Doe was in frequent contact with her grandfather and great-grandfather throughout the proceedings. Additionally, Doe's relatives accompanied her to the court hearings. Doe received mail at their residence, stored personal belongings at their residence, saw them on a weekly basis, and allowed her great-grandfather to provide child care for Z.B. before the Department took her into custody. The magistrate found Doe's testimony that she would maintain adequate housing and protect her children from unsafe individuals was not credible. As such, this Court will not reweigh the evidence, but will defer to the trial court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Consequently, Doe failed to demonstrate the ability to provide the proper parental care and control necessary for her children's well-being. Therefore, we conclude that the magistrate's finding that Doe neglected the children is based on substantial and competent evidence.

### 2. Inability to discharge parental responsibilities

The magistrate's finding that Doe has an inability to discharge her parental responsibilities for a prolonged period was based on substantial and competent evidence. Doe was provided with substantial assistance to educate and assist her in understanding how to be a protective parent and to provide adequate nutrition for her children. Nonetheless, Doe failed to show that she had the ability to discharge her parental responsibilities for a prolonged period. As discussed above, Doe continually subjected her children to individuals that posed a substantial threat of harm. In addition, Doe did not show the ability to ensure that her children receive adequate nutrition. For example, although L.B. was diagnosed with failure to thrive when she came into the Department's custody and Z.B. was removed because of nutritional concerns, Doe failed to take responsibility for the nutritional neglect of her children. The magistrate found that even as late as trial, Doe "still disputes any nutritional neglect of her children, shows little interest in learning about proper nutrition, and expressed concerns that [Z.B.]--a five month old baby--was 'getting too big.'"

Moreover, despite attending the classes required of her, she was not able to provide adequate care for her children. The guardian ad litem noted that it appears that Doe was "simply going through the motions of the plan to 'check off the boxes.'" This was evidenced by Doe's parenting when she was allowed to take the children for three-hour visitations in the summer of 2018. On one occasion, Doe had a visit with the children when it was over one hundred degrees outside. Doe failed to run the vehicle's air conditioning and both children were returned to the Department with symptoms of heat exhaustion, including L.B. vomiting. On another occasion, Doe asked the social worker if she could take L.B. to swim in a city pond that was recently contaminate with E Coli. Again, on a separate occasion, Doe asked the social worker if she could take the children, a six week old and a two year old, to a pond to go swimming. On another occasion, Doe hosted a birthday party for L.B. at a play center in Boise and sought permission from the Department to have a small number of adults attend the party. All of the individuals have substantial child protection histories and two of the individuals were registered sex offenders. Doe could not understand that those individuals posed a threat of harm to her children. When asked about the safety of inviting those adults, Doe responded "everyone has that kind of history."

Finally, the clinical psychologist, social worker, foster parent, guardian ad litem, director of the learning center, and a friend of Doe's all testified that Doe would be unable to safely parent the children and meet their basic needs on her own. For these reasons, and the reasons discussed above, the magistrate's determination that Doe has an inability to parent for a prolonged period is based on substantial and competent evidence.

## C. Best Interests of Children

Doe argues that the magistrate erred in concluding that it would be in the best interests of the children to terminate Doe's parental rights. The Department argues that substantial and competent evidence supports the magistrate's finding that termination of Doe's parental rights is in the best interests of the children.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the

financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interest of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate found it is in the best interests of the children to terminate their parent-child relationship with Doe in light of Doe's inability to ensure that her children receive adequate nutrition, safe and appropriate housing, and are protected from physical and sexual abuse. Doe argues "[i]t is possible, that with identification of Mother's disability and the provision of reasonable accommodation, Mother could become the adult caregiver described by the magistrate court. In that event, there is not clear and convincing evidence to support a conclusion that termination is in the Daughters' best interests." However, the magistrate's findings were supported by substantial and competent evidence.

The magistrate acknowledged that it is difficult to terminate Doe's parental rights because she is a vulnerable adult with a traumatic childhood but "[i]t is not acceptable, however, to sacrifice [the children's] physical and emotional well-being to shield [Doe] from further hardship and pain." The magistrate considered the evidence and concluded that

> It is clearly in [the children's] best interest to be raised by an adult caregiver who can meet their basic nutritional needs, maintain safe and drug-free housing, provide financial security, and assist them with their education when they reach school age. It is clearly in [the children's] best interest to have an adult caregiver who is capable and willing to protect them from adult men with a demonstrated history of domestic violence, physical abuse, substance abuse, alcoholism, and sexual offending. [Doe] cannot provide these certainties and stability . . . . It is seldom as clear in a Child Protective Act case that there is real and identifiable harm that will befall these children if they are returned to the exclusive care of [Doe].

We agree. Doe has failed to demonstrate that she can meet her children's basic needs and will protect her children from individuals that cause a risk of harm and sexual abuse. Doe is susceptible to manipulation by adult men and has continually chosen relationships with those individuals over the health and safety of her children. Doe's children had not received the stability at home that they deserve, but are making improvement while in relative foster care. Currently, the children reside together in their foster placement. The guardian ad litem testified

10

that both children are thriving in foster care and have a deep bond with their foster mother. The foster placement provides love, support, a structured home environment, and an opportunity for adoption. The children deserve to have permanency and stability. For these reasons and the reasons set forth above, termination of Doe's parental rights is in the best interests of the children.

## III.

## CONCLUSION

There is substantial and competent evidence to support the magistrate's findings that Doe neglected her children and is unable to discharge her parental responsibilities for a prolonged period. Additionally, it is in the best interests of the children to terminate Doe's parental rights. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Judge HUSKEY and Judge BRAILSFORD **CONCUR**.