# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50948

| | | |
|---|---|---|
| In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | Filed: December 29, 2023 |
| | ) | |
| Petitioner-Respondent, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| v. | ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE (2023-28), | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. Paige Nolta, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Magyar, Rauch & Associated, PLLC; Mandy L. Valentine, Moscow, for appellant.

Hon. Raúl R. Labrador, Attorney General; Briana R. Allen, Deputy Attorney General, Boise, for respondent.

Jennifer A. Ewers, Moscow, CASA.

---

GRATTON, Judge

Jane Doe (2023-38) (Doe) appeals from the magistrate court's judgment terminating her parental rights to her child. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the natural mother of Jane Doe I (Child). Child was placed in state custody after a shelter care hearing. A case plan hearing was held and the magistrate court entered a case plan for Doe. The case plan tasks included: (1) obtain appropriate housing; (2) submit to drug testing when requested; (3) obtain a psychological evaluation; (4) attend a parental fitness evaluation; and (5) participate in parenting education classes.

1

The magistrate court conducted regular review hearings and, during the child protection case, entered an order enjoining Doe from having contact with or harassing the foster mother. The magistrate court later entered a finding of aggravated circumstances, allowing the Idaho Department of Health and Welfare (Department) to cease reunification efforts with Doe. This determination was entered because Doe had her rights involuntarily terminated to another child in California. The magistrate court also found it was in Child's best interests to terminate reunification efforts.

The Department filed a petition to terminate Doe's parental rights. Doe did not file an answer to the petition but did file a witness and exhibit list. A motion was filed on Doe's behalf to continue the trial and appoint a guardian ad litem (GAL) for Doe. Both motions were granted.

The magistrate court reset the termination trial to February 2023. The GAL filed a motion to continue the trial a second time, which was granted, and the trial was reset to June 2023. Two days before trial, the GAL filed a report with the magistrate court and Doe filed a motion for continuance of the trial, indicating her mental health made her unable to fully participate in the trial. The motion was denied.

Both before and during the termination trial, Doe made multiple oral motions to continue the trial, all of which were denied. Doe attended the trial via Zoom from a Pullman, Washington hospital bed. At the time of trial, Ada County had a no bond warrant for Doe for two failures to appear at a probation violation hearing, and Doe stayed in the state of Washington. During the lunch recess at trial, Doe waived her right to appear at the remainder of the trial. Doe then signed a document titled "Stipulation to Termination of Parental Rights." The first paragraph of that document tracks the prescribed language from Idaho Code § 16-2007(3), which authorizes a parent to waive notice and appearance in a termination of parental rights proceeding, and reads:

> I, [Doe], being the other of [Child], do hereby waive my right to notice and my right to appear in any action seeking termination of my parental rights. I understand that by waiving notice and appearance of my parental rights to [Child], who was born on July 17, 2021, my parent rights to her may be completely and forever terminated, including all legal rights, privileges, duties, and obligations, including all rights of inheritance to and from the aforementioned child/children, and I do hereby expressly waive my rights to notice of or appearance in any such action.

The subsequent paragraphs in the stipulation include Doe's acknowledgments and stipulations that (1) termination of her parental rights is in her best interests and the best interests of Child; (2) she

2

is unable to discharge her parental responsibilities to and for Child and, as such, Child "lacks parental care necessary for her health, safety or well-being" and it is in Child's best interests that Doe's parental rights are terminated; (3) Doe knowingly, voluntarily, and of her "own free will, and without threat, coercion, or promises" agreed to terminate her parental rights; and (4) there is clear and convincing evidence "that will likely result in the termination of [her] parental rights and that it is in the best interest of [Child] to have those rights terminated."

At the termination trial, the magistrate court heard testimony from Doe's probation officer; a doctoral psychology clinician with a specialty in neuropsychology; Dr. James Phillips, who has a bachelor's and a master's degree in psychology and a Ph.D. in counselling; Heather Shannon, the first case manager for the Department; and Libby Carpenter, the second case manager for the Department. Dr. Phillips provided information to the court regarding Doe's mental health status. Dr. Phillips conducted an evaluation while Doe was incarcerated and diagnosed Doe with schizoaffective disorder (bipolar type), post-traumatic stress disorder, panic disorder, mild neurocognitive disorder due to a traumatic brain injury, and mixed personality features (narcissistic and borderline).

On June 22, 2023, Doe filed a motion to set aside her stipulation to terminate her parental rights and to reopen the case to present evidence. The magistrate court denied both motions. Thereafter, the magistrate court entered its findings of fact and conclusions of law and judgment terminating Doe's parental rights. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id*. The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe*

3

*v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe challenges the magistrate court's judgment terminating her parental rights to Child. Doe raises numerous arguments on appeal. Doe claims that the magistrate court erred by (1) finding circumstances warranting shelter care; (2) finding aggravated circumstances; (3) denying her motion for continuance; (4) denying her motion to withdraw her stipulation to termination; (5) finding the Department made reasonable efforts towards reunification; (6) finding neglect by conduct or omission; (7) finding neglect by inability to discharge parental responsibilities; (8) finding neglect by failure to complete the case plan; and (9) finding termination is in Child's bests interests. Doe also asserts a claim of ineffective assistance of counsel. We will address each argument below.

### A. Shelter Care

Doe argues the Department failed to present evidence to support the grounds for immediate removal of Child and consequently the magistrate court erred in finding sufficient circumstances existed at the shelter care hearing to place Child in the care of the Department. Doe cannot appeal the circumstances that brought Child into shelter care in this termination proceeding. Doe was required to raise that issue on appeal from the entry of the adjudicatory decree, which is an appealable decree. I.C. § 16-1625(1)(a). Because Doe failed to file a timely notice of appeal from the adjudicatory decree, this Court has no jurisdiction to consider Doe's challenge to the decree. I.A.R. 12.1. Moreover, whether Child was properly placed in shelter care is moot in light of subsequent proceedings culminating in termination of Doe's parental rights. Under the mootness doctrine, this Court will not consider issues "when the issues presented are no longer live, the parties lack a legally cognizable interest in the outcome, or a judicial determination will have no practical effect upon the outcome." *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 103, 107-08, 244 P.3d 247, 251-52 (Ct. App. 2010). Therefore, we will not further address Doe's untimely and moot challenge to Child's placement in shelter care.

**B.** **Aggravated Circumstances**

Doe argues that the magistrate court erred in finding aggravated circumstances pursuant to I.C. § 16-1602.[1] Idaho Juvenile Rule 49 governs the right to appeal in a Child Protection Act (CPA) case. The rule provides, in pertinent part, that "an aggrieved party may appeal to the district court those orders of the court in a C.P.A. action specified in I.C. § 16-1625" or the aggrieved may seek a permissive appeal to the Idaho Supreme Court pursuant to I.A.R. 12.1. Therefore, in order to bypass an appeal to the district court and pursue a permissive appeal to the Idaho Supreme Court, the aggrieved party must comply with I.A.R. 12.1. The finding as to aggravated circumstances is not a final judgment, it is an interlocutory order. *See Idaho Dep't of Health & Welfare v. Doe (2013-15)*, 156 Idaho 103, 107, 320 P.3d 1262, 1266 (2014) (holding that finding of aggravated circumstances is an interlocutory order). Doe did not appeal the aggravated circumstances finding to the district court or seek a permissive appeal to the Idaho Supreme Court. This Court is without jurisdiction to review the aggravated circumstances finding in this termination proceeding.

**C.** **Motion for Continuance**

Doe argues that denial of her motion for continuance of the termination trial deprived her of the opportunity to adequately participate in the termination proceedings based on her mental health condition. Specifically, Doe requested the continuance stating that she needed more time to prepare for the trial. However, Doe fails to demonstrate that the magistrate court abused its discretion in denying the continuance.

A motion for a continuance is addressed to the sound discretion of the trial court and will not be overturned on appeal absent a showing of abuse of that discretion. *Dep't of Health & Welfare v. Altman*, 122 Idaho 1004, 1009, 842 P.2d 683, 688 (1992); *Krepcik v. Tippett*, 109 Idaho 696, 699, 710 P.2d 606, 609 (Ct. App. 1985). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the

---

[1] On August 31, 2023, the Idaho Supreme Court amended Idaho Appellate Rule 11.1, effective nunc pro tunc to March 2, 2023. The amendment allows a permissive appeal to the Idaho Supreme Court from an order finding aggravated circumstances. However, because the order finding aggravated circumstances in this case was entered on September 30, 2022, the rule change would not encompass that order. Nonetheless, Doe would still be required to file a permissive appeal, which she did not do.

trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). In the context of a motion for a continuance, an appellant must show that his or her substantial rights were prejudiced by reason of the denial of a motion for continuance. *State v. Evans*, 129 Idaho 758, 762, 932 P.2d 881, 885 (1997).

The magistrate court found "[t]his matter has been continued since December. You have had lots of time to prepare, and we are moving forward." The magistrate court had previously granted two continuances. The magistrate court considered the history of the case and the best interests of Child, and appropriately denied Doe's untimely[2] request for a third continuance of the trial. While the GAL's report was received two days before trial, Doe had from February 2023 to June 2023 to confer with both her GAL and attorney about the case. Moreover, the basis for the motion for continuance was not the timing of the GAL's report, but some unspecified unpreparedness. Doe has not shown prejudice to her substantial rights based on the magistrate court's denial of another continuance of the termination trial. Contrary to her continuance claim, Doe asserts in her appellant's brief that she "was able to substantially participate in the proceedings from the hospital in Pullman, Washington, and the parties were not otherwise disadvantaged by Mother's digital attendance" such that the magistrate court erred in terminating her parental rights. It is difficult to reconcile Doe's claim that termination was improper in part because of her ability to participate in the hearing remotely while also claiming that the magistrate court violated her substantial rights by denying a third continuance.

The magistrate court did not abuse its discretion in denying the motion for continuance because it recognized the standard for determining whether a motion for continuance should be granted and, through the exercise of reason and consistent with applicable legal standards, determined that Doe failed to demonstrate she would be prejudiced absent a continuance.

---

[2] Doe's motion was untimely. "The Idaho Rules of Civil Procedure shall apply to C.P.A. proceedings to the extent that they are not inconsistent with these rules, statutes, or the law." Idaho Juvenile Rule 29. Idaho Rule of Civil Procedure 7 requires a written motion to be filed with the court "at least 14 days prior to the day designated for hearing." A trial court has discretion to modify pretrial and trial schedules for "good cause." I.R.C.P. 16(a)(3). Doe's motion was twelve days late and, as noted, failed to demonstrate good cause.

**D.       Stipulation for Termination and Waiver of Appearance**

Doe argues the magistrate court erred by denying her motion to withdraw the stipulation to terminate her parental rights. Doe claims that the stipulation was not signed under oath and there is no evidence in the record that she read the document before signing it or that counsel reviewed it with her prior to signing. The Department responds that the stipulation and waiver of appearance is not required to be under oath and did not serve as the basis for termination.

The magistrate court did not put Doe under oath because I.C. § 16-2007(3) does not require an oath prior to waiving the right to be present. All that is required is a signature on the waiver witnessed by a judicial officer. "Notice and appearance may be waived by a parent in writing and witnessed by a district judge or magistrate of a district court, or equivalent judicial officer of the state, where a person waiving notice and appearance resides or is present, whether within or without the county." I.C. § 16-2007(3). As Doe acknowledges, she signed the waiver when she appeared by Zoom where the magistrate court, the Department, and the GAL were also present and the magistrate later signed the waiver. Doe's counsel was also with her when she signed the waiver.

Doe argues that the record is "devoid" of any indication that Doe read the waiver or that counsel reviewed it with her. To the contrary, the magistrate court asked Doe if she understood the waiver and Doe answered that she understood she was waiving her right to attend the remainder of the hearing, and that all of her rights and obligations with respect to Child could be terminated. Doe's attorney verified for the court that Doe had the waiver form and held it up to the Zoom camera. There is no indication in the record that Doe did not understand the waiver before signing it.

With respect to the waiver, Doe alludes to her questionable competency and her allegations that the Department failed to engage in reasonable accommodations for her. While Doe suffers from mental illness, she was not deemed incompetent. Indeed, as noted above, Doe acknowledges that she was able to participate in the trial prior to the waiver. Nothing supports the claim that her entry into the waiver was unknowing or involuntary. As to reasonable accommodations, Doe does not suggest how a failure of accommodations impacted her decision to waive her presence at the remainder of the termination trial. Regardless, the magistrate court was well aware of Doe's mental health needs and appointed the GAL. The magistrate court permitted Doe to participate by

7

Zoom, made a plan to allow for additional time if Doe was discharged during trial, allowed breaks for Doe to meet with medical staff, and permitted the presence of a support person.

Further, the stipulation consenting to termination of Doe's parental rights did not factor into either finding of neglect. As Doe correctly notes, and as the magistrate court acknowledged, a parent may not consent to termination of parental rights unless that termination results in an adoption. *See Matter of Doe I*, 166 Idaho 759, 769, 463 P.3d 393, 403 (2019).[3] However, Doe's stipulation and waiver did not serve to terminate her parental rights because the magistrate court still completed the trial at which the Department presented evidence supporting the magistrate court's decision to terminate. As the magistrate court noted in its written order denying Doe's stipulation and waiver: "There would be no net result to [Doe's] benefit, should the court have granted the motion to withdraw her stipulation. The Stipulation did not matter as there is clear and convincing evidence even without the stipulation." Doe has failed to show error in the magistrate court's denial of her motion to withdraw the stipulation.

## E. Reasonable Efforts

Doe argues that the magistrate court erred in concluding the Department made reasonable efforts to reunite her with Child. She alleges that, although the Department and magistrate court were aware of Doe's mental health issues, the Department failed to appreciate Doe's mental health concerns or provide her with reasonable accommodations in completing her case plan.

The CPA contemplates that the Department will make reasonable efforts at reunification during the pendency of CPA proceedings. *In re Doe*, 156 Idaho 682, 688 n.3, 330 P.3d 1040, 1046 n.3 (2014). "However, whether the Department has made reasonable efforts at reunification is not part of the magistrate court's analysis when terminating parental rights on the grounds of neglect." *Id.*; *see* I.C. § 16-2002(3)(b)(i)-(ii). The Department's efforts at reunification should be addressed during the CPA proceedings by motion or argument to the court under I.C. § 16-1622(2)(g)(iii). *In re Doe*, 156 Idaho at 688 n.3, 330 P.3d at 1046 n.3. To the extent Doe argues the Department failed to make reasonable efforts at reunification, such argument is irrelevant to this Court's determination of whether the magistrate court erred in terminating Doe's parental rights.

---

[3] Although the magistrate court acknowledged the Supreme Court's decision in *Matter of Doe I*, the court stated it was not aware of any authority to prevent a parent from stipulation to "facts" or "conditions" that "can support the termination finding."

Moreover, the Department was excused from the reasonable efforts requirement once the magistrate court found aggravated circumstances--a finding Doe did not properly challenge on appeal. Therefore, the sufficiency of the Department's efforts at reunification are not properly before this Court on appeal.[4]

**F.      Statutory Basis for Termination**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court found, by clear and convincing evidence, that the Department had established three grounds of neglect: (1) neglect by conduct or omission of the parent, I.C. § 16-1602(31)(a); (2) neglect by inability to discharge parental responsibilities, I.C. § 16-1602(31)(b);

---

[4]      As noted above, the magistrate court found aggravated circumstances, which relieved the Department of continuing to apply reasonable efforts toward reunification.

and (3) neglect by failure of the parent to complete a case plan, I.C. § 16-2002(3)(b). Doe challenges the magistrate court's findings of neglect.

> **1.**      **Neglect by conduct or omission and inability to discharge parental responsibilities**

On appeal, Doe argues the magistrate court erred in finding neglect under I.C. § 16-1602(31)(a) and (b). Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents or their neglect or refusal to provide them. Section 16-1602(31)(b) provides that a child is neglected whose parent is unable to discharge the responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety, or well-being.

Failure to engage in offered mental health services can be evidence of neglect. *In Matter of Doe*, 161 Idaho 398, 406, 387 P.3d 66, 74 (2016). A court may consider a parent's failure to engage in a child protection case as evidence of neglect, including a parent's failure to provide a stable home, lack of employment, finances, and refusal to engage in services. *Id.* A parent's refusal to take accountability for deficiencies and blaming problems on other people may be evidence of neglect. *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 647, 837 P.2d 319, 322 (Ct. App. 1992).

At the time Child came into care, Doe's mental health was the main concern relative to her ability to provide proper care and control of Child. Doe did not make any real progress in mental health treatment during the case. She failed to regularly take mental health medication and she did not complete any form of mental health treatment. Doe was trespassed and discharged from providers, such as the Gritman Medical Center, due to her conduct. This made it difficult for Doe to participate in Child's appointments since Doe had to be accompanied by the Department to be on the premises. The Department attempted to help Doe find other providers after she was trespassed. The Department set up a parental fitness evaluation for Doe, but Doe threatened the evaluator and disrupted the proceedings causing the appointment to end. Doe was given referrals for longer-term care for her mental health but did not follow through with the referrals.

Doe also did not have appropriate housing for Child. Doe argues that the Department refused to provide an assessment of her residence. Specifically, Doe complains that the residence that she resided in during a portion of the pendency of this matter was not assessed by the Department even

though the Department knew it was permanent housing. However, the testimony revealed that Doe found this residence by meeting a man at a gas station. Doe stayed at this residence rent free. Moreover, Doe refused to communicate with her second case manager after October 2022 about her living situation, which made it impossible for the Department to assess the home.[5] Doe did not establish a safe place for Child to live.

Lastly, the magistrate court found that Doe's ability to appropriately parent had not improved. The magistrate court noted that Doe has had four allegations substantiated by the Department for neglect, abuse, homelessness, and drug exposure by her toward her children going back to 2015. Doe has five children. None of them are in her care, and Doe has had her parental rights terminated as to one of the children. Doe's first case manager testified about the safety concerns regarding how Doe was feeding Child. Doe would enlarge the feeding hole in a dirty bottle, place watered down mashed food therein, and then feed Child the bottle. When the Department would intervene or discuss the safety concerns, Doe would become agitated and scream at the various case managers assigned to her case. Doe's agitation and threatening behavior to Department staff, health care providers, and others occurred throughout the CPA case. Doe provided no financial support for Child. The testimony accepted by the magistrate court was that Doe and Child did not have a bond. Substantial and competent evidence in the record supports the magistrate court's findings and conclusions that neglect was established under I.C. § 16-1602(31)(a) and (b).

## 2. Neglect by failure to complete a case plan

Doe argues the magistrate court erred in finding that Doe failed to timely complete the case plan. Because each statutory ground of neglect is an independent basis for termination, and we have found sufficient evidence to support the magistrate court's findings of neglect under I.C. § 16-

---

[5]     In the first issue section of her appellant's brief, Doe contends that the finding of homelessness was not based upon substantial and competent evidence in the record. As noted, substantial evidence supports the magistrate court's determinations regarding Doe's housing situation. Yet, Doe goes further, stating:

> The open hostility from the Court is evidenced by the Court repeatedly disregarding Mother's mental and physical health, and the unborn child's health concerns; all while making demands that pushed Mother to her limits, thus proving their already preconceived outcome. Such actions were inappropriate. The entire transcript reinforces the Court's objective to prevent the reunification of Mother and daughter.

This argument is unsupported, baseless, and constitutes an *ad hominem* attack on the court. These types of arguments are unpersuasive. Suffice it to say that this *ad hominem* claim is completely unsupported by the record. Zealous advocacy and unfounded hyperbole are two different things.

1602(31)(a) and (b), we need not address Doe's arguments regarding neglect by failure to complete the case plan. *See Roe v. Doe*, 142 Idaho 174, 179, 125 P.3d 530, 535 (2005). Nonetheless, the magistrate court did not err in finding that Doe failed to complete the case plan.

Neglect exists where the parent has failed to comply with the court's orders or the case plan in a CPA case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

In this case, the magistrate court found that Doe neglected Child by failing to compete her case plan. Doe's case plan required (among other tasks) that Doe maintain stable housing, find employment, and complete drug treatment and parenting classes. Doe's first case manager worked with Doe for seven months but was never able to get Doe to make any progress on her case plan because Doe was so dysregulated the entire time. Doe concedes that she did not complete her case plan tasks. Doe acknowledges that the Idaho Supreme Court, as noted above, has held that inquiry into the Department's efforts at reunification is irrelevant to the termination of parental rights. However, Doe argues that "In this matter, there are compelling arguments for why a lack of immediate appellate recourse for a court's determination of the Department's reasonable efforts impacts her due process rights for termination of parental rights." She points to her mental health issues and the need for resources to complete her case plan. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). The Court, however, may address certain narrow issues involving due process violations despite the absence of supporting, cogent argument or citation to legal authority. *Idaho Dep't of Health & Welfare v. Doe (2017-32)*, 163 Idaho 536, 538, 415 P.3d 945, 947 (2018); *State v. Doe*, 144 Idaho 534, 536, 164 P.3d 814, 816 (2007). For example, the Idaho Supreme Court has previously addressed due process errors affecting parents' fundamental rights, including procedural errors and the application of an incorrect standard of review. *Doe (2017-32)*, 163 Idaho at 538, 415 P.3d at 947 (addressing procedural error); *Doe*, 144 Idaho at 536, 164 P.3d at 81 (addressing application of incorrect standard).[6]

---

[6] Doe failed to cite to this standard of review.

However, Doe's argument fails to establish any due process violation in regard to an alleged failure by the Department to provide resources for her to complete her case plan. Substantial and competent evidence supports the magistrate court's findings that the Department provided reasonable efforts to assist Doe in the CPA case prior to the finding of aggravated circumstances. Doe's first case manager attempted to work reunification with Doe despite ongoing difficulties with communication. Doe reported that a traumatic brain injury made it hard for her to remember, so her case manager provided her with monthly calendars with dates for doctors' appointments, court, and visitations identified on the calendars to overcome that barrier. The Department also referred Doe for a parental fitness evaluation to help Doe understand how to care for Child, but Doe disrupted the appointment with inappropriate and threatening behavior. The Department referred Doe to Parents as Teachers and a parenting coach for education. When housing became a barrier to reunification, the Department paid for a month-long hotel stay for Doe and helped her search for an affordable residence. Doe's second case manager helped Doe with a housing application, wrote a letter to appeal a denial for housing, provided Doe with gas vouchers, and tried to help Doe access services. Based on the magistrate court's factual findings, there is substantial and competent evidence for the magistrate court to find that the Department provided reasonable efforts to assist Doe in completing her case plan tasks.

Doe does not directly claim impossibility as a defense in her appellant's brief, but to the extent her arguments could be interpreted as suggesting compliance with her case plan tasks was impossible, we disagree. In *Idaho Department of Health & Welfare v. Doe*, 161 Idaho 596, 599, 389 P.3d 141, 144 (2016), the Idaho Supreme Court held that impossibility is a defense to termination of parental rights based on neglect for failure to comply with a case plan when the circumstances preventing the parent from complying with the case plan are beyond the parent's control. However, the Court further held that impossibility is not a defense where the parent is responsible for case plan non-compliance, either directly or indirectly. *Id*. at 600, 389 P.3d 145. The magistrate court noted a number of areas of non-compliance that were Doe's responsibility, either directly or indirectly. As noted above, while the magistrate court and the Department were well aware of Doe's mental health, there is no evidence of incompetency to complete her case plan. Doe's failure to complete the case plan tasks are a result of her refusal to engage with the Department, failure to secure appropriate housing, failure to address concerns regarding substance abuse, failure to complete or delay in completing mental health evaluations, failure to regularly

13

take mental health medications, failure to complete any type of mental health treatment, and failure to appropriately interact and bond with Child.

There is substantial and competent evidence to support the conclusion that Doe neglected Child by failing to complete her case plan. Doe does not dispute that Child was in the care of the Department at least fifteen of the last twenty-two months and reunification never occurred. Accordingly, the magistrate court did not err when it found Doe neglected Child by not completing her case plan.

### 3. Best interests of Child

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Doe (2013-15)*, 156 Idaho at 111, 320 P.3d at 1270. When considering the best interests of the child, a trial court may consider several factors:

> When determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, improvement of child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.

*Id*. The best interest analysis considers the reality that children need "stability and certainty." *Id*. at 112, 320 P.3d at 1271.

After finding that Doe neglected Child, the magistrate court determined that it is in Child's best interests to terminate Doe's parental rights. Specifically, Doe's untreated mental health concerns impaired her ability to provide a stable, consistent home for Child. Case managers testified about Doe's interactions with Child at visitations, where Child started out visitations happy, but as the visits progressed Doe refused to allow Child to play, would not allow Child any self-directed movement, and missed Child's queues. As a result, Child's affect became sad and flat.

The magistrate court made its determination that termination is in the best interests of Child based on numerous factors, including Doe's lack of stable employment, lack of efforts to improve her situation, failures to seek appropriate and long-term mental health treatment including regular counseling and medication management, refusal to maintain sobriety as mandated by the court, and periodic incarceration.

14

Lastly, Child is happy and has a well-bonded relationship with her foster family. The foster mother testified that Child progressed in foster care and was doing well. Within a couple of months, Child was on track developmentally to the point of no longer needing services from the Infant Toddler Program. The magistrate court stated: "The child needs continuing stability that [Doe] cannot provide." Based on all the above factors, substantial and competent evidence supports the magistrate court's finding that termination of Doe's parental rights is in Child's best interests.

**G.     Ineffective Assistance of Counsel**

Doe argues her trial counsel's actions and omissions fell outside an objective standard of reasonableness and constituted deficient performance, which resulted in prejudice. Pursuant to I.C. § 16-2009, Doe has a right to counsel during a termination hearing and the Idaho Supreme Court has determined that I.C. § 16-2009 provides for effective representation in proceedings terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2010-28)*, 150 Idaho 563, 566, 249 P.3d 362, 365 (2011). The Idaho Supreme Court, however, has not yet established a standard for assessing ineffective assistance of counsel claims in termination cases, and we decline to do so here. However, because the parties rely on *Strickland v. Washington*, 466 U.S. 668 (1984) to analyze the issue, we address Doe's arguments to the extent the record on direct appeal allows consideration of the challenges Doe raises.

To prevail on an ineffective assistance of counsel claim under *Strickland*, which is applied in criminal cases, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Id.* at 687-88. To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. In the context of criminal proceedings, this Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Doe asserts three claims of ineffective assistance of counsel: (1) counsel rendered ineffective assistance by not answering the petition, effectively admitting all allegations presented by the Department; (2) counsel rendered ineffective assistance by actively participating in getting Doe to sign the stipulation; and (3) counsel did not request an accommodation under the Americans with Disabilities Act (ADA) that would have been favorable in her case plan progress and reunification efforts. The Department responds that Doe's counsel was not deficient and that, in any event, Doe has failed to show prejudice. We will address each argument in turn.

First, with respect to Doe's claim that her counsel was ineffective for failing to file an answer to the State's petition to terminate parental rights, thus admitting on behalf of Doe the allegations contained in the petition, Doe fails to show any prejudice. In termination proceedings, a parent's failure to appear or defend against a termination petition does not excuse the Department from presenting clear and convincing evidence of the grounds to terminate parental rights. *In re Doe Children*, 159 Idaho 386, 392, 360 P.3d 1067, 1073 (Ct. App. 2015). If the court finds that a statutory basis has been established, the court must then determine whether clear and convincing evidence further establishes it is in the best interests of the child to terminate the parental relationship. *Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1065 (2009); *see also* I.J.R. 48; I.C. §§ 16-2005; 16-2007(2); 16-2009. The parent's failure to appear cannot, in and of itself, be the basis for terminating the parental rights as the failure to appear is not one of the statutory bases for terminating parental rights. *See* I.C. § 16-2005. Here, the admission to the allegations has no effect on the outcome of the matter. The Department is still required to prove neglect by clear and convincing evidence, regardless of the admissions. The magistrate court based the finding of neglect on the testimony provided at trial. Doe has failed to show she was prejudiced by counsel's lack of response to the State's petition.

In her second claim, Doe asserts she was prejudiced by her counsel's involvement in securing the stipulation for termination and waiver of appearance because the stipulation essentially created an additional ground for termination of her parental rights. As noted above, the stipulation is an effective waiver of Doe's right to appear in the termination proceeding. However, a parent may not consent to termination of parental rights unless that termination results in an adoption. *See Matter of Doe I*, 166 Idaho at 769, 463 P.3d at 403. Doe's stipulation did not serve to terminate her parental rights because the magistrate court relied on evidence presented at trial

16

in its decision to terminate Doe's parental rights. Doe has failed to show she was prejudiced by counsel's involvement in securing the stipulation and waiver of appearance.

Lastly, Doe contends trial counsel was ineffective by failing to preserve the argument that the Department deprived Doe of her rights under the ADA. To address Doe's concerns, the magistrate court appointed Doe a GAL due to Doe's mental health. The GAL filed a report outlining concerns about the impact Doe's participation in the trial would have on Doe's mental health. However, Doe failed to sign the required release of information for the GAL to provide the magistrate court with a full compilation of services that Doe needed. Even if counsel failed to raise the ADA accommodation request, Doe has not shown how this alleged deficiency prejudiced the outcome of the trial. Assuming the *Strickland* standard applies and applying those standards to Doe's ineffective assistance of counsel claims, raised for the first time on appeal, Doe has failed to show any prejudice resulting from her counsel's alleged deficiencies.

## IV.
## CONCLUSION

Doe did not timely appeal the shelter care decision or the aggravated circumstances finding; therefore, this Court cannot consider those issues. Doe's claims of error in the CPA action are not properly raised in this termination appeal. Doe has failed to show that the magistrate court erred in denying her request for a continuance or in terminating Doe's parental rights to Child. Doe has failed to show any prejudice in relation to her ineffective assistance of counsel claims. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.

17